FILED
IN CLERK
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
2012 OCT -3  PH 4: 07

U.S. DISTRICT COURT
EASTERN DISTRICT
NEW YORK

CHRISTOPHER SIMMONS,

    Plaintiff,

    v.

THE SEA GATE ASSOCIATION,
JEFFERY FORTUNATO and
THOMAS CARCHIDI,

    Defendants.

ECF/CM Case

Case No.

COMPLAINT

JURY TRIAL

KUNTZ, J.

AZRACK, M.J.

## NATURE OF THE ACTION AND THE PARTIES

1.      This is an action to redress unlawful employment practices under Title VII of the

Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., the New York

State Human Rights Law ("SHRL"), N.Y. Exec. L. §290 et seq., the New York City Human

Rights Law, ("CHRL"), N.Y.C. Admin. Code §8 -101 et seq., the Civil Rights, as amended, 42

U.S.C. §§ 1983 and 1985, and 42 U.S.C. § 1981.

2.      Christopher Simmons ("Simmons" or "Plaintiff") is an African-American and he

is a member of the class of persons under the protection of Title VII and The Civil Rights Act.

Simmons is a former employee of the Sea Gate Police Department ("Police Department"). The

Police Department reports to the Sea Gate Association.

3.      Defendant Sea Gate Association is a private community of homes in the Coney

Island section of Brooklyn, New York, ("Sea Gate" or "Board") is a not-for-profit corporation,

which serves as a homeowners' association for the Sea Gate community.

4.      Defendant Jeffery Fortunato ("Fortunato") is the chief executive of the Sea Police Department and he holds the title of Chief of Police. Fortunato is being sued in his individual capacity.

5.      Defendant Thomas Carchidi ("Carchidi") is an employee the Sea Police Department and he holds Sergeant. Carchidi is being sued in his individual capacity.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Simmons' Title VII and § 1981 claims pursuant to 28 U.S.C. §§ 1331, 1343, 1367(a)

7.      Venue is proper in this District and Division because all acts giving rise to Simmons' claims accrued in Kings County, New York.

8.      Simmons has satisfied all statutory prerequisites prior to filing this action.

## FACTS

9.      Simmons commenced his employment with Sea Gate's Police Department in June 2008 as patrol officer. Simmons was later promoted to Training Coordinator, a teaching position, and to Detective, while he continued with his duties as a patrol officer.

10.     Simmons' problems with department began on or about April 16, 2009, when he filed an official report on his action during a fire in which he performed crowd control the previous day. There, Simmons reported that the president of the Sea Gate Association took issue with being kept away from the building and a safety perimeter designated by the fire department during their fire suppression operation. Simmons report that the president called him a "schwartze," a german word meaning "black," but was incorporated into American Jewish slang to be a derogatory term towards black people. The report was given to Fortunato for further

2

action and to inform the Board on Simmons' behalf. Fortunato claimed that he investigated the incident and he declined to take any action because there were no witnesses.

11.     During the same timeframe referenced above, Simmons' application for a promotion to Detective was pending before the Board.

12.     In April 2010, when Simmons questioned Fortunato about his application given that it was pending for over six months, Fortunato stated, "if you were in the NYPD (New York City Police Department) you would be finished." Simmons viewed this as a reference to his complaint regarding the Board President. The next day, Simmons was notified that he was suspended because Fortunato determined that he was not fit for duty and that his fitness must be determined by a psychological evaluation.

13.     Two week later Simmons reported to work following a fit for duty determination by a psychologist employed by the department.

14.     On August 5, 2010, the Board and its new president voted to promote Simmons to the rank of Detective. Accordingly, Simmons had three titles: patrol officer, training coordinator, and detective.

15.     Things, however, did not change for Simmons; rather, the defendants received information that Simmons was about to file a complaint for unlawful discrimination in the terms and conditions of his employment with the New York State Division of Human Rights. Based on Simmons' information and belief, his union representative disclosed such information to the defendants. Simmons was about to complain about racial harassment, retaliation, and not receiving pay for past work while a white employee received extra salary for doing the same work.

3

16.     On or about October 29, 2010, Simmons filed his complaint with the New York State Division of Human Rights.

17.     On November 1, 2010, Simmons was demoted form his position as Training Coordinator.

18.     On December 10, 2010, or soon thereafter, Fortunato reported that an unknown informant disclosed that Simmons was sleeping in his patrol car while on duty. According to Fortunato, a security camera confirmed that Simmons was sleeping. Accordingly, Simmons received a reprimand.

19.     On December 15, 2010, Simmons was reprimanded for insubordination to Sargent Thomas for an incident involving a security lock on a file cabinet.

20.     On January 22, 2011, Sergeant Carchidi reported that he observed Simmons once again sleeping in his patrol car while on duty. Simmons was reprimanded.

21.     On January 22, 2011, Sergeant Carchidi reported that he observed Simmons having unauthorized access to a computer. Simmons was reprimanded.

22.     On January 25, 2011, Simmons was charged with unauthorized use of time ("theft of time") because he did not clock-out while he attended a union meeting although he informed Sergeant Schultz, the officer-in-charge, that he did not intend to request pay for attending a union meeting and a notation will be made to payroll. Nonetheless, Simmons was reprimanded for attempting "theft of time."

23. On February 4, 2011, Fortunato suspended Simmons because of the events that occurred in paragraphs 17 through 22. Shortly thereafter, Simmons employment with Sea Gate was terminated.

## COUNT I
## (TITLE VII - Sea Gate)

4

24. Simmons repeats and realleges every allegation in paragraphs 1 through 23 of this Amended Complaint with the same force and effect as though fully set forth herein.

25. At all relevant times, Sea Gate was an "employer" within the meaning of Title VII.

26. At all relevant times, Simmons was an "employee" of Sea Gate within the meaning of Title VII.

27. Sea Gate's conduct, as alleged herein, constituted unlawful employment practices and unlawful discrimination on the basis of race and national origin in violation of Title VII.

28. Sea Gate's conduct, as alleged herein, was carried out with malice or reckless disregard for Simmons has protected rights to be free from discrimination based on race and national origin.

29. As a result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs.

30. As a further result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

31. As a further results of Sea Gates unlawful conduct, Simmons entitled to recover such monetary damages and other damages, punitive damages, interest, and attorneys' fees and costs from Sea Gate under Title VII.

5

## COUNT II
### (TITLE VII – Sea Gate Retaliation)

32.     Simmons repeats and realleges every allegation in paragraphs 1 through 31 of this Amended Complaint with the same force and effect as though fully set forth herein.

33.     Sea Gate employs more than 15 employees; therefore, they meet the statutory minimum number of employee that is required for an action under Title VII.

34.     At all relevant times, Sea Gate was an "employer" within the meaning of Title VII.

35.     At all relevant times, Simmons was an "employee" of Sea Gate within the meaning of Title VII.

36.     Sea Gate's conduct, as alleged herein, constituted unlawful employment practices and unlawful discrimination on the basis of race and national origin in violation of Title VII.

37.     Sea Gate's conduct, as alleged herein, was carried out with malice or reckless disregard for Simmons has protected rights to be free from discrimination based on race and national origin because he was engaged in protected activity by complaining about outlawed workplace discrimination.

38.     As a result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs.

39.     As a further result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer, among other items, impairment and damage to her good name and

reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

40.     As a further results of Sea Gates unlawful conduct, Simmons entitled to recover such monetary damages and other damages, punitive damages, interest, and attorneys' fees and costs from Sea Gate under Title VII.

## COUNT III
## SHRL – Sea Gate

41.     Simmons repeats and realleges every allegation in paragraphs 1 through 40 of this Complaint with the same force and effect as though fully set forth herein.

42.     At all relevant times, Sea Gate was an "employer" within the meaning of the SHRL. N.Y. Exec. Law § 290 et seq.

43.     At all relevant times, Simmons was an "employee" within the meaning of the SHRL.

44.     Sea Gate's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of disability in violation of the SHRL.

45.     As a result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer, damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, embarrassment and humiliation with resulting monetary and other damages, including lost wages, lost benefits, lost pension and retirement earnings.

## COUNT IV
## SHRL – Sea Gate Retaliation)

46.     Simmons repeats and realleges every allegation in paragraphs 1 through 45 of this complaint with the same force and effect as though fully set forth herein.

7

47.     Sea Gate's conduct, as alleged herein, constituted unlawful employment practices and unlawful discrimination on the basis of race in violation of the SHRL.

48.     Sea Gate's conduct, as alleged herein, was carried out with malice or reckless disregard for Simmons' right to be free from discrimination based on race and because he was engaged in protected activity by complaining about outlawed workplace discrimination.

49.     As a result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs.

50.     As a further result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

51.     As a further results of Sea Gates unlawful conduct, Simmons entitled to recover such monetary damages and other damages, punitive damages, interest, and attorneys' fees and costs from Sea Gate under the SHRL.

## COUNT VI
## CHRL – Sea Gate

53.     Simmons repeats and realleges every allegation in paragraphs 1 through 51 of this Complaint with the same force and effect as though fully set forth herein.

54.     Sea Gate's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of disability in violation of the CHRL.

55.     As a result of SEA Gate's unlawful conduct, Simmons has suffered and continues to

8

suffer, damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, embarrassment and humiliation with resulting monetary and other damages, including lost wages, lost benefits, lost pension and retirement earnings.

**COUNT VII**
**CHRL – Sea Gate Retaliation**

56.     Simmons repeats and realleges every allegation in paragraphs 1 through 55 of this Complaint with the same force and effect as though fully set forth herein.

57.     At all relevant times, SEA GATE was an "employer" within the meaning of the CHRL.

58.     At all relevant times, Simmons was an "employee" within the meaning of the CHRL.

59.     Sea Gate's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of disability in violation of the CHRL.

60.     As a result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer, damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, embarrassment and humiliation with resulting monetary and other damages, including lost wages, lost benefits, lost pension and retirement earnings.

**COUNT VIII**
**The Civil Rights Act §1981**
**Sea Gate, Fortunato and Carchidi**

61.     Simmons repeats and realleges every allegation in paragraphs 1 through 60 of this complaint with the same force and effect as though fully set forth herein.

9

62.    The above-referenced conduct of Sea Gate was part of a pattern and practice of intentional discrimination on the basis of Simmons's race.

63.    Sea Gate Fortunato and Carchidi are jointly and several liable for acts of unlawful discrimination directed toward Simmons.

64.    The unlawful, discriminatory conduct mentioned herein interfered with Simmons' constitutional right to form a contractual relationship for employment.

65.    As a result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs.

66.    As a further result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

67.    As further results of Sea Gate's unlawful conduct, Simmons entitled to recover such monetary damages and other damages, punitive damages, interest, and attorneys' fees and costs from Sea Gate under §1981.

### COUNT IX
### The Civil Rights Act §1981 Retaliation
### Sea Gate, Fortunato and Carchidi

68.    Simmons repeats and realleges every allegation in paragraphs 1 through 67 of this complaint with the same force and effect as though fully set forth herein.

69.    The above-referenced conduct of Sea Gate was part of a pattern and practice of intentional discrimination on the basis of Simmons's race and national origin.

10

70.     Sea Gate Fortunato and Carchidi are jointly and several liable for acts of unlawful discrimination directed toward Simmons.

71.     The unlawful, discriminatory conduct mentioned herein interfered with Simmons' constitutional right to form a contractual relationship for employment.

72.     As a result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs.

73.     As a further result of Sea Gate's unlawful conduct, Simmons has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

74.     As further results of Sea Gate's unlawful conduct, Simmons entitled to recover such monetary damages and other damages, punitive damages, interest, and attorneys' fees and costs from Sea Gate under §1981.

## COUNT X
### Section 1983 - Fortunato and Carchidi

75.  Simmons repeats and realleges every allegation in paragraphs 1 through 74 of this Complaint with the same force and effect as though fully set forth herein.

76.  At all relevant times Fortunato and Carchidi acted under color of law as defined under the Civil Rights Act.

77.  At all relevant times Fortunato and Carchidi acted with the sole purpose of denying Simmons' right to due as guaranteed by the 14th Amendment to the Constitution of the United States.

11

78. Fortunato and Carchidi's conduct as alleged herein constituted unlawful act in denying Simmons the protection she is entitled to under the 14th Amendment.

79. As a result of Fortunato and Carchidi's unlawful conduct, Simmons has suffered and continues to suffer, damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, embarrassment and humiliation with resulting monetary and other damages, including lost wages, lost benefits, lost pension and retirement earnings.

## COUNT XI
### Section 1985 – Fortunato and Carchidi

80. Simmons repeats and realleges every allegation in paragraphs 1 through 79 of this Complaint with the same force and effect as though fully set forth herein.

81. At all relevant times Fortunato and Carchidi acted under color of law.

82. At all relevant times Fortunato and Carchidi acted with the sole purpose of denying Simmons' right to due process as guaranteed by the 14th Amendment to the Constitution of the United States.

83. Fortunato and Carchidi's conduct as alleged herein constituted unlawful act in denying Simmons the protection he is entitled to under the 14th Amendment.

84. As a result of Davis and Marchese's unlawful conduct, Simmons has suffered and continues to suffer, damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, embarrassment and humiliation with resulting monetary and other damages, including lost wages, lost benefits, lost pension and retirement earnings.

12

## PRAYER FOR RELIEF COMMON TO ALL COUNTS

WHEREFORE, Simmons requests judgment as follows and to grant further relief as may be necessary and proper:

(1) enter a judgment declaring the acts and/or practices of Sea Gate, Fortunato and Carchidi has to be in violation of the above described laws against discrimination;

(2) award Simmons as against Sea Gate, Fortunato and Carchidi, loss wages, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of Sea Gate, Fortunato and Carchidi's unlawful acts of discrimination in accordance with the above described laws against discrimination;

(3) award Simmons as Sea Gate, Fortunato and Carchidi, consequential damages for losses resulting from Sea Gate, Fortunato and Carchidi's unlawful acts of discrimination and unlawful harassment in accordance with the above described laws against discrimination;

(4) award Simmons as against Sea Gate , Fortunato and Carchidi, compensatory and punitive damages for among other items, injury, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with the above described laws against discrimination; and

13

(5) award Simmons as against Sea Gate, Fortunato and Carchidi the cost

of this action, together with attorneys' fees, in accordance with the above

described laws against discrimination;

## JURY DEMAND

Simmons demands a jury trial for all issues triable by jury.

Respectfully submitted,

October 3, 2012
New York, New York

LAW OFFICE OF
LOCKSLEY O. WADE, LLC
110 Wall Street, 11th Floor
New York, NY 10005
(212) 933-9180
(212) 933-9181 - Fax
*Attorney for Simmons*

By: _____
LOCKSLEY O. WADE, ESQ.

14